IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-02915-PAB-KLM

MICHAEL CORNELL,
LAUREN RODRIGUEZ,
JON BANKS, and
JEREMY CORDOVA,

    Plaintiff,

v.

DENVER C.A.R.E.S., a behavioral health facility operated by Denver Health Medical Center/Denver Health and Hospital Authority,
ALICIA PORTILLO,
PAUL ROSE, and
JOHN DOES #3 and #4, employees of DENVER C.A.R.E.S.,

    Defendants.

---

# ORDER

---

This matter is before the Court on the Motion to Dismiss Plaintiffs' First Amended Complaint and Jury Demand [DOC #54] [Docket No. 61] filed by "Denver Health and Hospital Authority," Nicole McLean, Alicia Portillo, Rene McQuiller, Ava Walston, and Paul Rose (collectively, "defendants").[1] The Court has jurisdiction pursuant to 28

---

[1] The parties stipulated to the dismissal with prejudice of all claims against former defendants Denver Police Department; Robert C. White, Denver Police Chief; John Does #1 and #2; Nicole McLean; Rene McQuiller; and Ava Walston. Docket Nos. 84, 86, 91-92. The stipulations did not dismiss plaintiffs Michael Cornell, Lauren Rodriguez, and Jeremy Cordova. See Docket Nos. 84, 86. However, this appears to have been an oversight. The notice of partial settlement filed by Mr. Cornell, Ms. Rodriguez, and Mr. Cordova indicated that, after the parties filed their stipulation to dismiss, the only claims that would remain pending were those "asserted by Plaintiff Jon Banks against Defendants Denver C.A.R.E.S., Alicia Portillo, and Paul Rose." Docket No. 85 at 2. This result is consistent with the allegations in the amended complaint. See Docket No. 54. Accordingly, the Court will dismiss with prejudice all

U.S.C. § 1331.

## I. BACKGROUND[2]

On October 1, 2016, plaintiff Jon Banks ("plaintiff") began vomiting while watching a football game at a bar in Denver, Colorado. Docket No. 54 at 11, ¶ 76. Bar staff called an ambulance for plaintiff, which took him to Denver Health Medical Center where he was treated for intoxication. *Id*., ¶ 78. After approximately six hours, a van from defendant Denver C.A.R.E.S. ("Denver CARES") picked up plaintiff and transported him to the Denver CARES facility. *Id*. at 12, ¶¶ 79, 80. Denver CARES is a behavioral health facility with a mission to provide drug and alcohol detoxification and rehabilitation services. Id. at 3, ¶ 8. Denver CARES is operated by the Denver Health and Hospital Authority ("DHHA"), a political subdivision of the State of Colorado. *Id*.

After plaintiff arrived at Denver CARES, security staff confiscated plaintiff's personal belongings, including his wallet and cellular telephone. Docket No. 54 at 13, ¶ 86. Defendant Paul Rose, an employee of Denver CARES, created a "service plan" for plaintiff's "safe and humane detox," which was signed by Alicia Portillo, a registered nurse. *Id*. at 4, ¶ 16 and at 13, ¶¶ 87-88. Denver CARES staff told plaintiff that he was not free to leave the facility until he blew a 0.000 blood alcohol level ("BAL") on a breathalyzer test. *Id*., ¶¶ 90, 92. Plaintiff observed multiple people be placed in solitary

---

claims by Mr. Cornell, Ms. Rodriguez, and Mr. Cordova and all claims against defendants John Does #3 and #4 pursuant to the notice of partial settlement and related stipulation of dismissal. Docket Nos. 85, 86; *see also* Docket No. 54 at 15, ¶ 108; Fed R. Civ. P. 41(a)(2).

[2] The following facts are taken from the first amended complaint and are assumed to be true for the purposes of this motion.

confinement for demanding to know what legal right the facility had to involuntarily detain them. *Id*., ¶ 94. Prior to being released from Denver CARES, plaintiff was required to submit to a fifteen-minute exit interview. *Id*. at 14, ¶¶ 95-96.

After plaintiff was released, Denver CARES billed plaintiff's medical insurance provider for his treatment using information that it took from his wallet while he was at the facility. Docket No. 54 at 14, ¶ 97. Plaintiff filed a complaint with the DHHA, which responded that Denver CARES' clients "may leave whenever they wish unless they have been placed on a hold," and that he could have left at any time if he had asked to do so, but he did not. *Id*., ¶ 98.

On May 8, 2017, plaintiff's claims against defendants were added to this lawsuit as part of the first amended complaint. Docket No. 54. Plaintiff brings four claims: (1) unlawful seizure of his person in violation of the Fourth Amendment of the United States Constitution, (2) violation of procedural due process in violation of the Fourteenth Amendment of the United States Constitution and Article II, Section 25 of the Colorado Constitution, (3) violation of substantive due process in violation of the Fourteenth Amendment, and (4) common law false imprisonment. *Id*. at 21-26.[3] On May 22, 2017, defendants filed a motion to dismiss plaintiff's claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and asserted that they are entitled to qualified

---

[3] The complaint does not state the statutory basis for plaintiff's constitutional claims. *See* Docket No. 54 at 21-25. Defendants assume that plaintiff's federal constitutional claims must be brought pursuant to 42 U.S.C. § 1983. Docket No. 61 at 5. Plaintiff does not dispute defendants' characterization of his claims as brought pursuant to § 1983 and relies on caselaw interpreting § 1983 in arguing that he has stated a claim on which relief can be granted. Docket No. 64 at 4 (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

3

immunity. Docket No. 61 at 1-2. Defendants also asserted that plaintiff's false imprisonment claim is barred by the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat § 24-10-101, et seq. Docket No. 61 at 14.

## II. ANALYSIS

### A. Federal Constitutional Claims

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks omitted).

#### *1. Denver CARES*

"A municipality may not be held liable under 42 U.S.C. § 1983 simply because it employs a person who violated a plaintiff's federally protected rights." *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).[4] "To establish municipal liability, a plaintiff must show (1) the

---

[4] Although plaintiff alleges that Denver CARES is a "subsidiary" of DHHA, which is a "political subdivision of the State of Colorado," Docket No. 54 at 3, ¶ 8, defendants

4

existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Id*. The plaintiff must further show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) (citing *Brown*, 520 U.S. at 403). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). Thus, in order to state a claim under § 1983 for deliberate indifference based on a policy or practice, a plaintiff must allege "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 769.

Defendants argue that plaintiff fails to state a claim against Denver CARES because he has not sufficiently alleged an official policy or custom. Docket No. 61 at 6-7. In response, plaintiff argues that he and the four other individuals discussed in the amended complaint were treated similarly and that the Court should infer a custom from their common experience of being "held against his or [her] will for hours" in violation of the procedures of Colorado's emergency commitment statute, Colo. Rev. Stat. 27-81-111. Docket No. 64 at 4-5.

---

do not argue that Denver CARES cannot be considered a person under § 1983 or that it is entitled to Eleventh Amendment immunity as an arm of the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) ("[T]he Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies." (citation omitted)).

An "official policy or custom may be inferred from a complaint's allegations," *Starstead v. City of Superior*, 533 F. Supp. 1365, 1369 (W.D. Wis. 1982) (citing *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981)), and courts have done so where a "systematic pattern" suggests a policy or custom "in some form was the motivating force." *Id*. at 1369-70. The amended complaint alleges several policies and customs, but each is stated in conclusory fashion in terms of a legal violation. For example, plaintiff alleges that Denver CARES has a policy and custom of "unlawfully committing intoxicated individuals who do not pose a threat to themselves or others," Docket No. 54 at 18, ¶ 130, and has a policy and custom of "rounding up intoxicated individuals who they believe have the means to pay for Denver CARES' services and committing them to the Denver CARES facility without their consent and in violation of the Colorado emergency commitment statute." *Id*. at 18-19, ¶ 134. These allegations do little more than claim that Denver CARES has a policy or custom of committing constitutional or statutory violations. Such allegations are insufficient because they do not provide specific facts that support an inference that there is policy or custom that was the "moving force" leading to the resulting constitutional deprivations. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004); *see also Smith v. D.C.*, 674 F. Supp. 2d 209, 212 (D.D.C. 2009) (dismissing case where plaintiff alleged "systemic problems" with inmate medical treatment but did "nothing more than recite the requisite causal elements of custom or policy liability based on deliberate indifference"); *compare Lawson v. Dallas Cty.*, 286 F.3d 257, 263 (5th Cir. 2002) (finding deliberate indifference where institutional policies prevented nurses from seeing patients regularly and

providing sufficient care). The similarity among the five individuals discussed in the complaint is that they were held against their will.[5] Instead of identifying a specific policy that caused them to be held, plaintiff claims generically that plaintiff and the others were "detained pursuant to some set of procedures that treated them like they were simply medical patients who elected to be at the facility." Docket No. 64 at 5. But the circumstances of each individual's alleged detention varied, and plaintiff does not point to or allege a particular policy or custom that could have led to each incident. *See Turpin v. Mailet*, 619 F.2d 196, 203 (2d Cir. 1980) (overturning a jury verdict based on a pattern or practice of police harassment because poor decisions made "in the regular course of . . . business" did not indicate a policy or practice of "encouraging police harassment").

Plaintiff does allege a specific fact in common with another individual discussed in the complaint that could be viewed as a policy or custom. Plaintiff alleges that unnamed "staff" told him upon arrival that he was being "detained for his level of intoxication and that he was not free to leave until he blew .000 BAL on a breathalyzer test." Docket No. 54 at 13, ¶ 90. The complaint also alleges that staff told Jeremy Cordova that he "would be permitted to leave when his breath alcohol test registered 'triple zeros,' or .000," twelve hours after he arrived at the facility. *Id*. at 16, ¶ 112. But these two similar facts are not enough for the Court to plausibly infer systematic conduct, particularly where, as here, plaintiff does not allege or argue that Denver

---

[5] As part of this detention, each individual was allegedly required to submit to an intrusive exit interview before being released. *See* Docket No. 54 at 10, ¶ 70, at 14, ¶ 95, and at 18, ¶ 128. Plaintiff's response does not discuss this aspect of plaintiff's experience or argue that it is a consequence of a particular policy.

CARES has a policy or custom of refusing to release individuals who cannot register a .000 on a breathalyzer test. *See Atwell v. Gabow*, No. 06-cv-02262-JLK, 2008 WL 906105, at *8 (D. Colo. Mar. 31, 2008) ("Simply aggregating eight individual claims and calling them the result of a 'custom or policy of discrimination' is insufficient."), *aff'd*, 311 F. App'x 122 (10th Cir. 2009). Therefore, the Court will dismiss plaintiff's federal constitutional claims against Denver CARES for failing to allege a policy or custom that was the moving force behind the alleged constitutional violation.

### 2. *Individual Defendants*

Plaintiff alleges that Mr. Rose and Ms. Portillo (collectively, the "individual defendants") "completed" plaintiff's service plan form and signed it, respectively. Docket No. 54 at 13, ¶¶ 87-88.

Defendants assert that the individual defendants are entitled to qualified immunity. Docket No. 61 at 7. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides immunity from trial and the other burdens of litigation such as discovery, rather than merely providing a defense to liability. *See Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Therefore, a court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a

heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001); *see id.* at 914 (although qualified immunity protects public officials "from the costs associated with defending against lawsuits, particularly baseless ones, it d[oes] not follow that a defendant's claim of qualified immunity c[an] always be resolved before at least some discovery [is] conducted.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 591-93 & 593 n.14 (1998)).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier,* 533 U.S. at 201.

When evaluating a claim of qualified immunity, "'clearly established law' should

not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Casey*, 509 F.3d at 1283-84 (quoting *Saucier*, 533 U.S. at 202); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).

That being said, factual novelty alone will not automatically provide a state official with the protections of qualified immunity. *See Casey*, 509 F.3d at 1284 (noting that in the Fourth Amendment context, "there will almost never be a previously published opinion involving exactly the same circumstances"); *Blake*, 469 F.3d at 914 ("[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks and alteration marks omitted)). The Tenth Circuit employs a "sliding scale" in identifying clearly established law: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey*, 509 F.3d at 1284 (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)); *see also Pauly*, 137 S. Ct. at 552 ("'*Garner* and *Graham*

10

do not by themselves create clearly established law outside 'an obvious case.'" (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004))).

### a. Fourth Amendment Claim

The Court will first address plaintiff's allegations under the Fourth Amendment.[6] The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007). A government official "may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission" to the official's show of authority. *Brendlin v. California*, 551 U.S. 249, 254 (2007); *see also United States v. Mosley*, 743 F.3d 1317, 1324 (10th Cir. 2014).

Defendants argue that plaintiff has not alleged a constitutional violation because he has not alleged personal participation by the individual defendants. Docket No. 61 at 11-12. Defendants further argue that the amended complaint lacks specific allegations supporting the conclusion that the individual defendants' actions led to an unlawful seizure. *Id*. at 12.

---

[6] The Fourth Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment. *See United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). For ease of reference, the Court refers herein only to the Fourth Amendment.

11

Plaintiff responds that the individual defendants personally participated by "setting in motion the course of events that caused [his] rights to be violated." Docket No. 64 at 6. Plaintiff claims that, by preparing the service plan form, the individual defendants "demonstrate[d] that they are the people responsible for ratifying and executing the unconstitutional detention of . . . Mr. Banks." *Id*. at 7. Plaintiff further argues that the individual defendants' actions were clearly established as constitutional violations pursuant to *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013), *as amended on denial of reh'g* (Jan. 8, 2014), and the requirements of Colorado's emergency commitment statute, Colo. Rev. Stat. 27-81-111(1)(a). Docket No. 64 at 8.

The Court finds that plaintiff has not carried his burden to show that the individual defendants violated clearly established law. In *Myers*, the Tenth Circuit determined that the Fourth Amendment claim at issue was for malicious prosecution, not unlawful seizure, and remanded for the trial court to determine whether the defendant was entitled to qualified immunity. 738 F.3d at 1194-96. The court did not address whether the plaintiff's allegations stated a claim; it simply found that, because the plaintiff was detained after legal process had been initiated, the claim was necessarily in the nature of malicious prosecution. *Id*. at 1195. Given that the court did not address whether the plaintiff's allegations had stated a constitutional violation, it is unclear how *Myers* could have put the individual defendants on notice that their actions violated plaintiff's constitutional rights, and plaintiff provides no explanation. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

violates that right."). Moreover, plaintiff's argument that the individual defendants should have known that they were violating his rights because they were not in compliance with Colorado's emergency commitment statute is contrary to controlling law. Plaintiff cites no authority for the proposition that a state statute should have put the individual defendants on notice that they were violating plaintiff's federal constitutional rights. In fact, the Tenth Circuit has held that alleged violations of state law cannot support claims brought under § 1983. *Wilder v. Turner*, 490 F.3d 810, 814 (10th Cir. 2007) ("Of course a 'violation of state law cannot give rise to a claim under Section 1983.'" (quoting *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1164 (10th Cir. 2003))).

Although the Tenth Circuit employs a sliding scale approach to determinations of whether a constitutional violation was clearly established, plaintiff makes no argument that the individual defendants' conduct was particularly egregious such that it would warrant a finding that the law was clearly established under this approach. *See Casey*, 509 F.3d at 1284. As plaintiff acknowledges, the individual defendants merely filled out or signed the service plan, *see* Docket No. 64 at 7, and there is no allegation that the individual defendants falsified the contents of that plan. *Compare Snell v. Tunnell*, 920 F.2d 673, 700-01 (10th Cir. 1990). In fact, the amended complaint does not allege with any detail what a service plan is and what it is used for. *See* Docket No. 54. Because plaintiff has not shown that there is clearly established law that would have put individual defendants on notice that they were violating plaintiff's constitutional rights by completing or signing a service plan, the Court will dismiss plaintiff's first claim on

13

qualified immunity grounds.

### b. Due Process Claims

As with the first claim, defendants argue that plaintiff does not allege any action by the individual defendants that deprived plaintiff of substantive or procedural due process. Docket No. 61 at 13. In particular, defendants argue that plaintiff has not alleged a show of authority by the individual defendants or that they physically restrained him. *Id*. Defendants further argue that plaintiff cannot point to a decision showing what process plaintiff was due in his particular circumstances. *Id*. at 14

Plaintiff responds again that the individual defendants are liable for setting in motion the chain of events that led to plaintiff's due process rights being violated. Docket No. 64 at 9-10 (citing *Snell*, 920 F.2d 673).[7] Plaintiff further argues that requiring him to make a showing of what process he was due places a heightened pleading requirement on him that is impermissible, *id*. at 10 (citing *Anderson*, 483 U.S. at 640), and that the individual defendants failed to comply with the requirements of Colorado's emergency commitment statute. *Id*.

---

[7] Plaintiff claims that defendants made "no argument that the Individual Defendants are entitled to qualified immunity with regard to [his] substantive due process claim" and therefore states that he will not address it. Docket No. 64 at 8 n.1. Defendants raised qualified immunity with respect to all of plaintiff's claims against the individual defendants. Docket No. 61 at 7 (asserting qualified immunity regarding claims two and three) and at 15 (seeking dismissal of plaintiff's claims "in their entirety"); Docket No. 72 at 8 (aguing that plaintiff's "Due Process claims fail"); *see also Gomez v. Toledo*, 446 U.S. 635, 639-641 (1980) (holding that the burden of asserting qualified immunity is on the defendant). Accordingly, the Court addresses both of plaintiff's due process claims insofar as they are based on the United States Constitution. As explained below, the Court declines to exercise supplemental jurisdiction over plaintiff's second claim insofar as it is brought under the Colorado Constitution.

14

The Court finds that plaintiff has failed to show that law regarding his due process claims was clearly established. While plaintiff is correct that there is no heightened pleading standard for claims subject to a qualified immunity defense, *see Currier v. Doran*, 242 F.3d 905, 915 (10th Cir. 2001), plaintiff nonetheless has the burden to show that there was clearly established law that would have put the individual defendants on notice that their alleged actions violated his constitutional rights. *Id*. at 923. Plaintiff does not attempt to meet this burden and cites only cases stating general principles of due process law that bear no factual similarity to the allegations at issue. *See* Docket No. 64 at 8-9. The Supreme Court has repeatedly rejected the proposition that such general principles suffice to make the law clearly established. *Pauly*, 137 S. Ct. at 552.[8] Because plaintiff has not shown that the law regarding the individual defendants' alleged violation of his substantive and procedural due process rights was clearly established, the Court will dismiss, on qualified immunity grounds, plaintiff's second claim insofar as it is based on the United States Constitution and plaintiff's third claim.

### B. State Law Claims

With the dismissal of plaintiff's federal claims, the only claims that remain are plaintiff's state law false imprisonment and constitutional claims. While courts may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court may decline to exercise jurisdiction over such claims if "the district court has dismissed all claims over which it

---

[8] Plaintiff does not argue that the individual defendants' actions were egregious. *See* Docket No. 64 at 10.

has original jurisdiction." When § 1367(c)(3) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims "'absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)) (reversing the district court's grant of summary judgment on state law claims); *Endris v. Sheridan Cty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed") (unpublished). *But see Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (finding no abuse of discretion in trial court's decision to retain jurisdiction over state law claims after plaintiff voluntarily dismissed claims arising under federal law) (unpublished). Plaintiff has not identified any reason the Court should retain jurisdiction over the state law claims if the federal claims are dismissed, and the Court finds no compelling reason to retain jurisdiction. Plaintiff's state-law claims will be dismissed without prejudice. *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (holding that, when declining to exercise supplemental jurisdiction over state-law claims, court "had discretion either to remand the claims to the state court or to dismiss them") (unpublished). As a result, plaintiff's second claim, insofar as it is based on the Colorado Constitution, and fourth claim for relief will be dismissed. *See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (interpreting 28

U.S.C. § 1367(d) as tolling the statute of limitations while claim is pending in federal court); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that all claims by plaintiffs Michael Cornell, Lauren Rodriguez, and Jeremy Cordova and all claims against defendants John Does #3 and #4 are dismissed with prejudice. It is further

**ORDERED** that Motion to Dismiss Plaintiffs' First Amended Complaint and Jury Demand [DOC #54] [Docket No. 61] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that plaintiff Jon Banks' first claim, second claim (insofar as it is based on the United States Constitution), and third claim against defendants Paul Rose and Alicia Portillo are dismissed without prejudice on the basis of qualified immunity. It is further

**ORDERED** that plaintiff Jon Banks' first claim, second claim (insofar as it is based on the United States Constitution), and third claim against defendant Denver C.A.R.E.S. are dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6). It is further

**ORDERED** that, because the Court declines to exercise supplemental

jurisdiction, plaintiff Jon Banks' second claim, insofar as it is based on the Colorado Constitution, and plaintiff Jon Banks' fourth claim are dismissed without prejudice.

**ORDERED** that, within 14 days of the entry of this Order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 13, 2018.

                                      BY THE COURT:

                                      s/Philip A. Brimmer
                                      PHILIP A. BRIMMER
                                      United States District Judge